FILED
DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

2009 FEB 28 A 11: 48

R auK
SO. DIST. OF GA.

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | CASE NO.: CR507-020 |
| v. ) | |
| RAMIRO TRUJILLO GONZALES, ) a/k/a Oscar Palacious, ) MANUEL FLORES, ) HECTOR FERNANDEZ GARCIA ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Defendants Ramiro Trujillo Gonzales ("Gonzales"), Manuel Flores ("Flores"), and Hector Fernandez Garcia ("Garcia") have all filed Motions to Suppress, seeking to exclude from the trial of this case any evidence obtained through the stop and search of a vehicle and certain statements made by Gonzales. The undersigned conducted a hearing on these matters on January 8, 2008, at which Deputy James Mercier of the Brantley County Sheriff's Department testified. Based on the following, Defendants' motions should be **DENIED** in part and **GRANTED** in part.

### FINDINGS OF FACT

The credible evidence before the Court establishes the following:

On the night of October 4, 2007, Defendants were traveling north on Florida Avenue in Brantley County, Georgia, in a white 1996 Chevrolet Tahoe. While on patrol, Deputy Mercier observed Defendants' vehicle traveling in the opposite direction as his patrol car. Defendants' vehicle approached a "road closed" sign which sat in the middle

of the street, and proceeded to travel around the sign and through on the closed road. Because he could not travel down the closed road because of its condition, Deputy Mercier attempted to travel around to the road's exit to locate the vehicle. When he did not find the vehicle at the road's exit, he turned around and traveled to the intersection of Highways 301 and 520. At that intersection he found Defendants' vehicle, and followed the vehicle onto Highway 520 traveling west. At this point Defendant Mercier observed the driver failing to maintain his lane by weaving over the outside fog line several times. Mercier stopped the vehicle on Highway 520 by activating his blue lights. After the vehicles were stopped, Mercier asked Defendant Gonzales, the driver, to step to the rear of the vehicle. Mercier subsequently attempted to identify the passengers in the vehicle, at which time he observed spent shell casings in the car. Defendants Flores and Garcia were removed from the vehicle, at which time the officer observed several firearms in the truck.[1] Defendants were placed in handcuffs, and the firearms and ammunition were removed by officers from the vehicle. Gonzales tested positive for the presence of alcohol in his system, and was placed under arrest for driving under the influence and on a suspended license. Flores and Garcia were also placed under arrest for open container violations. All three Defendants were subsequently charged with violations of 18 U.S.C. § 922(g)(5) – Illegal Alien in Possession of Firearm.

---

[1] Removed from the vehicle were: one AK-47 automatic rifle; two AR-15 assault rifles; one Smith and Wesson .38 caliber revolver; one Ruger P-94 .40 caliber semi-automatic pistol; three loaded magazines for rifles; one loaded magazine for Ruger semi-automatic pistol; five spent 223 rounds; six live Federal 38 special rounds; and twenty-six LG 95 live rounds.

## DISCUSSION AND CITATION TO AUTHORITY

I. **Evidence Resulting From Vehicle Stop**

Defendants assert that the traffic stop in question was unconstitutional. Specifically, Defendants contend that the initial traffic stop was not supported by probable cause as required by the Fourth Amendment. Defendants argue that all evidence discovered as a result of the stop, including the firearms and ammunition, should be suppressed.

Conversely, the Government asserts that the traffic stop was lawful, because Deputy Mercier had a valid basis on which to stop Defendants' vehicle. The Government contends that the officer observed the violation of several traffic laws and suspicious behavior and, based upon these observations, the stop was reasonable under the Fourth Amendment.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated . . . but upon probable cause . . . ." U.S. Const. IV. A traffic stop such as the one at issue here constitutes a "seizure" within the meaning of the Fourth Amendment. Whren v. United States, 517 U.S. 806, 809-10, 116 S. Ct. 1769, 1772, 135 L. Ed. 2d 89 (1996). Consistent with the Fourth Amendment's guarantees, police "may stop a vehicle when there is probable cause to believe that the driver is violating any one of the multitude of applicable traffic and equipment regulations relating to the operation of motor vehicles." United States v. Cooper, 133 F.3d 1394, 1398 (11th Cir. 1998) (internal punctuation and citation omitted).

Furthermore, "[l]aw enforcement officers may briefly detain a person for an investigatory stop if they have a reasonable, articulable suspicion based on objective facts that the person has engaged, or is about to engage, in criminal activity." United States v. Diaz-Lizaraza, 981 F.2d 1216, 1220 (11th Cir. 1993) (citing Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)). Reasonable suspicion is "more than a hunch, at least 'some minimal level of objective justification,' taken from the totality of the circumstances." Id. at 1220-21 (quoting United States v. Sokolow, 490 U.S. 1, 7-8, 109 S. Ct. 1581, 1585, 104 L. Ed. 2d 1 (1989)). Ultimately, "a traffic stop is a constitutional detention if it is justified by reasonable suspicion under Terry or probable cause to believe a traffic violation has occurred under Whren . . . ." United States v. Chanthasouxat, 342 F.3d 1271, 1275 (11th Cir. 2003).

It was Deputy Mercier's testimony at the suppression hearing on this matter that Defendants' vehicle went around a "road closed" sign and traveled down the road that was marked closed, an action the officer recognized as illegal. (Doc. No. 45, pp. 8-10). Deputy Mercier also testified that the vehicle was speeding as it traveled down the closed road, going an estimated ten to fifteen miles per hour in excess of the posted speed limit. (Doc. No. 45, p. 9). Furthermore, Mercier testified that once the vehicle was relocated on the other side of the closed road, it failed to maintain its lane and weaved over the fog line several times. (Doc. No. 45, pp. 12-13). Defendants have provided no testimony refuting the Government's evidence that the driver actually exhibited such behavior.[2] When Deputy Mercier observed the vehicle disregard the

---

[2] Instead, Defendants' chief aim is to discredit the testimony of Defendant Mercier as to these events. Their attempt to do so focuses on the fact that Mercier did not include the traffic violations in his initial report, but instead listed one in a supplemental report days later and testified to the others at hearings on this matter. The Court, however, finds Mercier's version of events, specifically as they apply to the traffic

road closed sign, speed, and weave, he was justified in initiating the traffic stop, as the driver had disobeyed three (3) traffic laws of the State of Georgia. See O.C.G.A. § 40-6-20 (disregard or disobedience of traffic-control device is violation of law); O.C.G.A. § 40-6-181 (general speeding provision); and O.C.G.A. § 40-6-48 (vehicles shall be driven within a single lane).

Defendants contend that these traffic violations were not the officer's real reason for stopping the vehicle, and that he "intended to stop the vehicle before any alleged wrongdoing occurred." (Doc. No. 52, p. 5). However, an officer's individual subjective intention is irrelevant to the Court's analysis. Whren, 517 U.S. at 813, 116 S. Ct. at 1774. Where the driver of a vehicle violates a traffic law, no matter how minor, a motion to suppress cannot be based on a claim that the stop was pretextual. Id. Thus, so long as an objective police officer would have stopped the driver for committing a traffic violation, it matters not whether Mercier subjectively wanted to investigate another offense, relating to thefts in the area or otherwise. Defendants have made no dispute as to the traffic violations; therefore, the stop of the vehicle was lawful. Accordingly, Defendants' motions to suppress the evidence resulting from the stop should be **DENIED**.

II. **Gonzales's Statements as to Immigration Status**

Defendant Gonzales contends that his statements regarding his immigration status[3] made to the Immigration and Customs Enforcement ("ICE") Agent should be

---

violations, to be credible. While the officer's initial report did not contain information about the traffic violations, Mercier filed a supplemental report noting the vehicle's failure to maintain its lane, and testified consistently about the events at both the probable cause and suppression hearings.

[3] Specifically, Gonzales points to his admission to the Agent that he is in the United States illegally. (Doc. No. 52, p. 8).

suppressed. Gonzales asserts that because he was in custody and was not advised of his Miranda warnings prior to the conversation in question, the statements must not be used by the Government to prove his immigration status. Conversely, the Government alleges that the information provided by Gonzales was identification information and is therefore not constitutionally protected.

The parties have stipulated that the conversation between the ICE Agent and Gonzales occurred while Gonzales was in custody, and that he had not previously been advised of his Miranda rights. (Doc. No. 45, pp. 53-54). The Government's argument in favor of the statements' admission is that "a request for identification by immigration authorities does not amount to information protected by the fourth amendment" under I.N.S. v. Delgado, 466 U.S. 210, 104 S. Ct. 1758, 80 L. Ed. 2d 247 (1984). (Doc. No. 53, p. 8). Here, however, Gonzales had clearly been seized for Fourth Amendment purposes, as he was in custody and under arrest. In Delgado, the Supreme Court specified that under the circumstances of that case, the interviews were not conducted under "custodial" conditions, and that there was therefore no argument "that the questioning by INS agents posed any threat to the privilege against self-incrimination protected by the Fifth Amendment." Id. at 231, 104 S. Ct. at 1761, n.3. The Court found it unnecessary to consider whether immigration agents should be required to issue a Miranda warning before asking such status questions. Id. Because the Government offers no other case law in support of the statements' admission, it has failed to meet its burden of demonstrating that Gonzales was provided with the required constitutional safeguards applicable to statements obtained through custodial interrogation. See Miranda v. Arizona, 384 U.S. 436, 475, 86 S. Ct. 1602, 1628 16 L.

AO 72A
(Rev. 8/82)

6

Ed. 2d 694 (1966). Accordingly, Defendant Gonzales's motion, to the extent it seeks suppression of statements regarding his immigration status, should be **GRANTED**.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendants' Motions to Suppress, to the extent that they seek to bar admission of evidence resulting from the traffic stop, be **DENIED**. Defendant Gonzales's Motion to Suppress should be **GRANTED** to the extent it seeks suppression of statements he made about his immigration status.

**SO REPORTED AND RECOMMENDED**, this 28th day of February, 2008.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE